S. AMANDA MARSHALL, OSB #95347
United States Attorney
District of Oregon
LEAH K. BOLSTAD, OSB #05203
Leah.Bolstad@usdoj.gov
STEVEN MYGRANT, OSB #03129
1000 S.W. Third, Suite 600
Portland, OR 97204-2902
Telephone:  (503) 727-1000
Facsimile:  (503) 727-1117
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 3:12-CR-00169-HA |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| JACOB JUDSON TOLMAN | |
| Defendant. | *Sentencing Hearing 2-13-13 at 9:00 a.m.* |

The United States of America, by S. Amanda Marshall, United States Attorney for the District of Oregon, through Leah K. Bolstad, Assistant United States Attorney (AUSA), and Steven Mygrant, Special Assistant United States Attorney (SAUSA) for the District of Oregon, hereby submits the following sentencing memorandum.

## I.   GOVERNMENT'S SENTENCING RECOMMENDATION

For the reasons set forth below, the government recommends that the Court impose a mid-range sentence of 188 months' imprisonment, a four-year term of supervised release, and a $100 fee assessment.  Such a sentence properly addresses the nature and seriousness of the

offense, provides just punishment, affords adequate deterrence and significantly protects the public from further crimes of this defendant.

## II.     SUMMARY OF PROCEEDINGS

On April 10, 2012, the grand jury indicted defendant with three counts of heroin trafficking offense. (CR 1). Count 1 alleged a Len Bias offense, Distribution of Heroin Resulting in Death. That charge carries a statutory mandatory minimum of twenty (20) years' imprisonment and a maximum of life imprisonment. Count 2 alleged Conspiracy to Distribute Heroin in an amount exceeding 100 grams, a crime that carries a five-year statutory minimum and a 40-year statutory maximum. In Count 3, defendant was charged with simple Distribution of Heroin. On April 30, 2012, defendant appeared in federal court on the indictment, pled not guilty and was detained by Judge Papak pending further review. (CR 6). On May 2, 2012, Judge Acosta detained defendant as both a danger to the community and a risk of flight. (CR 8).

On October 4, 2012, defendant entered a guilty plea to Count 2, Conspiracy to Distribute Heroin, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(i). The maximum sentence for this offense is forty years' imprisonment, a statutory mandatory minimum of five years, a fine of $5,000,000, at least five years of supervised release, and a $100 fee assessment. The United States Probation Office completed a Presentence Report (PSR). The government agrees with the PSR's factual summary, criminal history, and guideline calculation estimating an advisory guideline range of **188-235 months' imprisonment**.[1]

///

---

[1] The advisory guideline range does not include the government's recommendation of an additional one-level downward variance under Section 3553(a) to recognize defendant's early resolution of this case. Such a variance would produce an estimated guideline range of 168-210 months' imprisonment. PSR ¶ 9.

**Government's Sentencing Memorandum, 3:12-CR-00169-HA**                                         **Page 2**

### III.     FACTUAL BACKGROUND

On November 5, 2011, at 8:40 a.m., deputies with the Clackamas County Interagency Task Force (CCITF) responded to a call of an overdose death in Milwaukie. PSR ¶ 17. The victim was identified as Zachary Holland (23), a young man who was living in his grandmother's basement. When Zachary did not return his mother's phone calls or text messages, his mother called Zachary's grandmother and asked her to check on him. His grandmother found Zachary slumped over, lying face down on his bed, cold to the touch. PSR ¶ 16. Responding officers found syringes and drug paraphernalia on the bed near Zachary's body. When the medical examiner turned Zachary over, he found two lengths of blue rubber strapping and a syringe clutched in Zachary's hand. PSR ¶ 17.

Zachary Holland was a heroin addict who, like so many others, struggled to free himself from this gripping addiction. He had been in and out of drug treatment for many months, and his mother and sister reported that they believed he had had at least two months of sobriety leading up to November 5, 2011. PSR ¶ 18. For the two months leading up to his death, Zachary had been working as a vacuum salesman, and appeared to be on the right track. PSR ¶ 18. Indeed, his younger sister reported that when she saw her brother the night before he died, she was happy because he looked better than she had seen him in a long time.

Deputies seized Mr. Holland's cell phone on which they viewed text messages from the previous evening (November 4, 2011) to and from Richard Jennings, asking Jennings "for some black." PSR ¶ 19. "Black" is a term often used by drug dealers and customers to refer to heroin. Mr. Holland's teenage sister reported that she had driven her brother, at his request, to a house in Oregon City the previous evening (November 4, 2011). PSR ¶ 20. Mr. Holland had told his sister that he needed to go pay a guy to whom he owed money. Officers used this information

and the phone records to identify Richard Jennings as the possible source of the heroin. PSR ¶ 20. Although she did not know Mr. Jennings, Mr. Holland's younger sister was able to identify him from photo throw down as the person her brother met with the previous evening.

On November 5, 2011, agents endeavored to work up the heroin distribution chain. They used Mr. Holland's cellular phone to set up a buy from Richard Jennings, just as Jennings was being released from a 12-hour probation violation sanction in the Clackamas County Jail. PSR ¶ 20. Deputy Ritter, using Holland's phone, texted Jennings at 6:45 p.m. and asked for the "*same stuff as last night*." Phone records show that Jennings contacted defendant Jacob Tolman by phone at 7:04 p.m. At 7:16 p.m., Jennings texted back to the Mr. Holland's phone, "*yeah, i just got out, my dude's on the way over. i'll hit you up in just a min*." PSR ¶ 21. Surveillance officers at Mr. Jennings' residence observed a white Camaro arrive with three occupants, briefly stop, and then depart. That vehicle was later identified as being associated with Jacob Tolman, the defendant. PSR ¶ 21. Surveillance officers also observed other vehicles coming, briefly stopping, and then leaving, consistent with ongoing drug sales. PSR ¶ 21.

The surveillance team allowed the white Camaro to leave the area, after which officers arrested Jennings and seized seven balloons of heroin from his bedroom. PSR ¶ 22. After they advised Jennings of his *Miranda* rights, officers told Mr. Jennings that Zachary Holland was dead, and that he died from an apparent heroin overdose. Mr. Jennings was shocked and appeared to be immediately remorseful. He made a full confession to having sold $20 worth of heroin to Zachary Holland on the previous evening. PSR ¶ 23. When asked where he obtained the heroin he sold to Zach Holland, Jennings explained that it was from "Jake" [Tolman], that "Jake" is his only source of supply for heroin, and that he had been buying heroin from "Jake"

since July 2011.  PSR ¶¶ 23-24.  Jennings admitted that he too was a heroin user, and he sold heroin to fund his own addiction.

      CCITF officers attempted to continue working up the chain from Jennings to the defendant, Jacob Tolman.  On November 16, 2011, Clackamas County ITF officers stopped defendant's white Chevy Camaro and arrested defendant on an outstanding warrant.  PSR ¶ 25.  After being advised of his *Miranda* rights, defendant consented to a videotaped interview in which he discussed his criminal activity but he was evasive initially about selling heroin to Jennings.  Deputy Ritter explained that a young man named Zachary Holland had overdosed and died as a result of using heroin sold by defendant.  Deputies explained the seriousness of his situation, including the fact that he was a career offender facing enhanced sentencing exposure.  Defendant asked to speak without the videotape recording.  He admitted to being a heroin dealer and explained that he started by buying eight-balls (1/8 ounce quantities), then quarter ounces, and eventually moved up to buy ounce quantities of heroin for $1200.  PSR ¶ 28.  Defendant also admitted that he sold heroin to Jennings on November 4 and November 5, 2011.  PSR ¶ 29.  Phone tolls confirmed the connections between Tolman and his sources as well as Tolman and Jennings.  During a search at the apartment where defendant had been temporarily residing, officers interviewed several co-habitants who were admitted heroin users supplied by defendant.  PSR ¶ 33.  Officers found defendant's drug ledger inside a locked trunk, along with two pounds of marijuana.  PSR ¶ 31.

//

//

//

//

## IV. SENTENCING CONSIDERATIONS

While not bound by the Sentencing Guidelines, district courts must consult the Guidelines and take them into account when sentencing. *United States v. Booker,* 543 U.S. 220, 125 S. Ct. 738, 767 (2005). Even though the Guidelines are advisory, they remain influential in an effort to ensure national consistency. *Gall v. United States*, 128 S. Ct. 586, 596 (2007) ("to secure nationwide consistency, the Guidelines should be the starting point and initial benchmark" for sentencing); *see also United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir. 2006) ("[The] continuing duty of district courts to consult the Guidelines is statutory.").

After the parties are given a chance to argue for a sentence they believe is appropriate, the Court should consider the § 3553(a) factors and decide if they support the sentence suggested by the parties. *United States v. Carty,* 520 F.3d 984, 991 (9th Cir. 2008) (citing *Gall*, 128 S. Ct. at 596-97, n.6). The Court must make an individualized determination based on the facts, may not presume that the Guideline range is reasonable, and should not give the Guidelines factors more or less weight than other § 3553(a) factors. *Id.* If the Court decides an outside-Guidelines sentence is warranted, the Court must ensure the justification is sufficiently compelling to support the degree of variance. *Id.* And finally, once a sentence is selected, the Court must explain it sufficiently to permit meaningful appellate review. *Id.* at 992.

Factors to consider under 18 U.S.C. § 3553(a) include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense; the need for the sentence to promote respect for the law; the need for the sentence to provide just punishment for the offense; the need for the sentence to afford adequate deterrence to criminal conduct; the need for the sentence to protect the public

from further crimes of the defendant; and the need to provide the defendant with needed training, care, or treatment.

## V.	GUIDELINES CALCULATION & 3553(a) FACTORS

### A.	Base Offense Level – Career Offender

The government agrees with the sentencing guideline calculations in ¶¶ 39-48. The parties have agreed defendant is responsible for 600 grams of heroin, resulting in a base offense level of 28. Plea Agreement ¶ 7; PSR ¶ 6. The parties have agreed that defendant distributed heroin that resulted in Zachary Holland's death. Plea Agreement ¶ 7; PSR ¶ 6. The parties have agreed that defendant qualifies as a career offender because the defendant was over 18 years of age when he committed the underlying offense of Conspiracy to Distribute Heroin and the defendant has two separate prior qualifying convictions. Therefore, under Guideline § 4B1.1(a), defendant is a career offender. Because the statutory maximum sentence of the offense of conviction is forty (40) years' imprisonment, a base offense level 34 applies pursuant to § 4B1.1.

### B.	Criminal History

The government agrees with the PSR writer that without the Career Offender status, defendant has eleven (11) criminal history points that would produce a Criminal History Category of V. PSR ¶ 61. As a Career Offender however, defendant's Criminal History Category is designated as a Level VI under §4B1.1. Plea Agreement ¶ 7; PSR ¶ 45, 62. There is a very significant fact about defendant's criminal history with respect to this case. On November 1, 2011, defendant convinced a Clackamas County judge to release him on his own recognizance on charges of Unlawful Delivery of Oxycontin. On November 4, 2011, defendant distributed heroin that resulted in Zachary Holland's death. PSR ¶ 58. A mere 72 hours after his release, defendant violated the law by selling Richard Jennings a distribution quantity of heroin.

That heroin was ultimately used by Zachary Holland, a young man who had struggled with addiction and treatment for many months.  As this Court weighs the § 3553(a) factors to determine a fair and just sentence, the government urges it to consider the need to protect the public from future crimes of this defendant.  His recent history indicates that even when pending charges for unlawful distribution of controlled substances, even when given a chance to live in the community pending trial, defendant immediately returned to his criminal behavior by selling a lethal drug that is wreaking havoc in this community.

### C.   Restitution to the Victim's Family

This drug-trafficking crime had a victim with a name.  Defendant agreed that his conduct in selling heroin resulted in the death of Zachary Holland.  Plea Agreement ¶ 7.  In terms of the nature and circumstances of this offense, it is the worst kind of drug offense – it is the kind of offense that ends someone else's life.  The seriousness of his offense is not lost on defendant, as reflected by his apology letter (PSR ¶ 36), and by his willingness to accept responsibility at an early stage of the case.  Pursuant to his plea agreement, defendant agreed to pay restitution to Mr. Holland's family for burial and memorial expenses.  PSR ¶ 34.  After the completion of the PSR, Zachary Holland's family provided proof of restitution in the amount of $550.  The government will provide proof of this figure at sentencing and will request the Court to order restitution in amount of $550.

### D.   Acceptance of Responsibility

The government agrees with the PSR writer and recommends a three-level reduction in offense level to recognize defendant's acceptance of responsibility pursuant to § 3E1.1.  PSR ¶ 37.  The government also recommends an additional one-level downward variance, under

Title 18, United States Code, Section 3553(a), to recognize defendant's early resolution of his case and a reasonable sentence in light of that early resolution.  Plea Agreement ¶ 9; PSR ¶ 101.

## VI.   CONCLUSION & RECOMMENDATION

Based on a career offender offense level of 34 and a criminal history category VI, defendant's guideline range prior to adjustments is 262-327 months' imprisonment.  After a three-level reduction for acceptance of responsibility, and an additional one level downward variance under Section 3553(a) for early resolution, defendant's advisory guideline range is 168-210 months' imprisonment.  The parties have agreed to a sentencing range of 13 to 17 years whereby the defense may ask for a sentence as low as 13 years (156 months) and the government may request a sentence no higher than 17 years (204 months).  Plea Agreement ¶ 12.  The parties agreed that this is a reasonable sentencing range, considering the factors listed in Title 18, United States Code, Section 3553(a).

The government believes that a mid-range sentence of **188 months'** imprisonment is a fair and just resolution to this case.  The government made significant concessions in crafting this resolution.  The government agreed not to file a Section 851 enhancement based on defendant's prior felony drug-manufacturing conviction.  Such an enhancement would have served to increase the statutory maximum on Count 2 from forty years to life, which would have also produced a higher career offender base offense level of 37 rather than 34.  The government also allowed defendant to plea to the heroin distribution conspiracy alleged in Count 2, which carries a five-year minimum, rather than require a plea to Count 1 – Distribution of Heroin Resulting in Death, which carries a 20-year mandatory minimum.  If convicted after trial of Count 1, and if the Section 851 enhancement had been filed, this career offender would have been facing a mandatory minimum sentence of life imprisonment.  *See* 21 U.S.C. § 841(b)(1)(B).

Despite the seriousness of the offense conduct, defendant's status as a Career Offender and the fact that a young man died as a result of this offense, the government believes that resolving the case short of a 20-year minimum was and is an appropriate resolution that saves the victim's family from reliving this tragedy in a drawn-out criminal prosecution.

For the reasons set forth above, the government urges the Court to impose a mid-range guideline sentence of 188 months' imprisonment, followed by four years on supervised release, and a fee assessment of $100.  A mid-range sentence of 188 months' imprisonment will protect the public from further crimes of the defendant, reflect the seriousness of the offense, promote respect for the law, deter others from distributing heroin, and provide punishment for the defendant, while also satisfying the requirement of 18 U.S.C. § 3553(a), as a "sentence sufficient, but not greater than necessary" to meet the purposes of § 3553(a)(2).

Dated this 6th day of February 2013.

Respectfully submitted,

S. AMANDA MARSHALL
United States Attorney

*s/ Leah K. Bolstad*
LEAH K. BOLSTAD, OSB #05203
Assistant United States Attorney

*s/ Steven Mygrant*
STEVEN MYGRANT, OSB #03129
Special Assistant United States Attorney